

CS-19-2409
Truong

IN THE DISTRICT COURT FOR THE STATE OF OKLAHOMA
OKLAHOMA COUNTY

DALLAS LOFFI-LARA, )
                                    PLAINTIFF )
v.                                                      )
                                                           )
OKLAHOMA DEPARTMENT OF          )
MENTAL HEALTH AND SUBSTANCE  )
ABUSE SERVICES, an agency of the State )
of Oklahoma; MIKE ALBA, individually; )
KATIE LANDERS, individually; JIM IGO, )
individually; and AAIZA CHAUDHRY, )
individually;                                       )
                                  DEFENDANTS )
                                                           )

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

APR 3 0 2019

RICK WARREN
COURT CLERK

CASE NO. CJ-2019-

JURY TRIAL DEMANDED
ATTORNEY'S LIEN CLAIMED

CJ - 2019 - 2409

## PETITION

COMES NOW the Plaintiff, Dallas Loffi-Lara, and his claim for damages which he incurred as a result of discrimination while employed with Defendants Oklahoma Department of Mental Health and Substance Abuse Services ("OKDMHSAS" or "employer"); Mike Alba; Katie Landers; Jim Igo; Aaiza Chaudhry; and Jason Maricle. Plaintiff hereby alleges and states as follows:

1. Plaintiff Dallas Loffi-Lara is a resident of Cleveland County and a citizen of the State of Oklahoma.

2. Defendant Oklahoma Department of Mental Health and Substance Abuse Services is an executive agency of the State of Oklahoma.

3. Griffin Memorial Hospital ("Hospital") in Norman, OK, is owned and operated by OKDMHSAS. The Hospital is located in Cleveland County.

1

**EXHIBIT 2**

4.  On information and belief, Defendant Mike Alba is a resident of Cleveland County and citizen of the State of Oklahoma.

5.  On information and belief, Defendant Katie Landers is a resident of Cleveland County and citizen of the State of Oklahoma.

6.  On information and belief, Defendant Jim Igo is a resident of Cleveland County and citizen of the State of Oklahoma.

7.  On information and belief, Defendant Aaiza Chaudhry is a resident of Cleveland County and citizen of the State of Oklahoma.

8.  During all times relevant to this action, Plaintiff was an employee of the Hospital.

9.  On information and belief, all of the acts complained of occurred in Cleveland County in the State of Oklahoma.

10. Under 51 O.S. § 163(A), venue is proper in Oklahoma County.

## ADMINISTRATIVE REQUIREMENTS PRIOR TO FILING

11. Plaintiff served a tort claim on OKDMHSAS via hand delivery on February 28, 2019, and via certified mail on March 6, 2019. The tort claim is still pending. Exhibit 1, Tort Claim - redacted

12. Plaintiff filed a claim with the Equal Employment Opportunity Commission ("EEOC") on May 21, 2018. His charge was issued on June 18, 2018, and his Dismissal and Notice of Rights letter was issued on January 31, 2019. Exhibit 2, EEOC Packet - redacted

## STATEMENT OF FACTS

13. This is a claim for damages resulting from harassment, discrimination, and retaliation against Plaintiff based on his sexual orientation, gender, and exercise of his rights under the Family and Medical Leave Act ("FMLA").

2

14. Plaintiff has been – and continues to be – harassed, threatened, and retaliated against for exercising his rights with the Equal Employment Opportunity Commission ("EEOC").

15. The conduct of OKDMHSAS violates Title VII of the Civil Rights Act, the FMLA, and the Oklahoma Anti-Discrimination Act ("OADA").

16. Since May 4, 2010, Plaintiff has been employed with Griffin Memorial Hospital, a part of OKDMHSAS.

17. OKDMHSAS employs more than 50 employees.

18. All Plaintiff's Performance Management Process ("PMP") reviews have been graded as "exceeds standards."

19. Beginning in 2015, Plaintiff served as the Interim DON until Defendant Mike Alba was hired for that position.

20. Both prior to and after Alba's hire, Plaintiff was advised by both then-Executive Director Lori Jordan and Alba that he was next in line for the DON position once Alba retired "soon."

21. OKDMHSAS has an "Equal Employment Opportunity and Non-Discrimination" policy. The policy incorporates the protections of Title VII of the Civil Rights Act, among other statutes. The policy specifically prohibits harassment and discrimination on the basis of sex.

22. Supervisors are responsible for reporting complaints of discrimination to the Civil Rights Unit of OKDMHSAS and implementing corrective actions for discriminatory conduct.

23. Plaintiff is a member of the LGBTQ community.

24. On one occasion, Plaintiff was held in a conference room by then-Executive Director Randy May. May demanded to know Plaintiff's "gay name," which consisted of the first street he ever lived on and the first dog he ever owned. The incident was reported and investigated.

3

Thereafter, May was allowed to resign in lieu of termination, which preserved his retirement benefits.

25. On or about February 2, 2016, Plaintiff was sexually harassed by co-worker Marty Wilson. Wilson called Plaintiff derogatory names regarding his sexual orientation.

26. Plaintiff notified Alba, then supported his complaint with witness statements. Alba told Plaintiff that he and Wilson, who are both older than Plaintiff, were "from the same generation" and that Plaintiff "should just let it go."

27. On information and belief, Wilson was not disciplined. Additionally, Alba's suggestion to "just let it go" and his condoning the behavior based on his "generation" indicate Alba's willingness to allow, rather than prohibit, discriminatory conduct in the workplace.

28. Furthermore, Alba was frequently found to be extremely affectionate with female employees, and Alba did not hold the females accountable to the same standards as he did Plaintiff.

29. In September 2016 and September 2017, Plaintiff applied and was approved for leave under the FMLA as a result of a serious health condition.

30. All Plaintiff's FMLA leave was scheduled and approved in advance by Alba. However, on numerous occasions, Alba advised Plaintiff that he "should be glad [he had] FMLA protections," or words to that effect.

31. In early March 2018, Alba announced his retirement.

32. On March 14, 2018, the DON position was announced, and Plaintiff submitted his application the same day.

33. Before he applied, Alba said to Plaintiff, "I'm not telling you to not put in for the [DON] position, but do you seriously think that your leave will not be considered?"

4

34.  Plaintiff asked whether Alba was referring to his approved FMLA leave, and Alba said, "Yes, they need someone that can be here five days a week."

35.  Alba continued to discuss Plaintiff's use of FMLA as being a pivotal factor in the decision-making process for the next DON.

36.  The following day, Plaintiff talked to Alba again about his comments regarding his leave. Alba said, "I think you are a contender, Dallas. But I think the fact that you are not here a lot does not help you."

37.  Alba encouraged Plaintiff to discuss his use of FMLA during his interview for the DON position.

38.  OKDMHSAS policy 9.1 "Application and Selection Process" sets out the procedures for conducting interviews. Procedure 2c states (emphasis added):

The structured interview process shall incorporate the use of an interview panel. The interview panel **shall** be comprised of at least one female, one male and one a member of Minority Race or Ethnicity [defined in the policy as "Black, Hispanic, Asian or Pacific Islander and American Indian or Alaskan Native"]. One of these individuals may be designated as the chairperson of the interview by the Hiring Authority. The hiring authority **shall** select interview panel members who are knowledgeable about the skills needed to perform the duties of the vacant position and have successfully completed the E-Learning course "Interview and Selection Process". [sic] The immediate supervisor of the vacant position should be a member of the interview panel unless an unstructured interview is anticipated.

39. The interview panel for the DON position consisted of four people: Katie Landers, Director of Management Support Services; Jim Igo, Outgoing Executive Director; Aaiza Chaudhry, Director of Consumer Services; and Mike Alba, Outgoing-DON.

40. The interview panel did not meet the requirements as set out in OKDMHSAS policy.

41. The policy states that the panel members **shall** have completed the "Interview and Selection Process" course, but none of the panel members had completed the course.

42. The policy also states that the interview panel **shall** be diversified by both gender and race or ethnicity. While it appears that the panel did meet the gender diversity requirement, it is unclear whether the panel included a member of a minority race or ethnicity.

43. Two of the members of the panel had either shown or had cause to act in a non-neutral manner towards Plaintiff.

44. Alba was not a neutral panel member. Alba had previously demonstrated his unwillingness to prohibit illegal sexual harassment after complaints lodged by Plaintiff.

45. Alba had told Plaintiff that his use of federally-protected FMLA leave would be a factor in in his application for the DON position.

46. Alba was known to treat female employees more favorably than males.

47. Landers was not a neutral panel member. She had cause to be biased against Plaintiff because he had previously reported a relationship between Landers' sister and a nurse under his supervision because the relationship violated agency policy.

48. One member of the panel was not knowledgeable about the vacant DON position.

49. Chaudhry was not a qualified panel member, since she had been at Griffin Memorial Hospital less than two weeks prior to the interview. As a result, Chaudhry did not have time to obtain

the requisite knowledge of the skills needed to be a successful DON at Griffin Memorial Hospital.

50. After the DON interview in March 2018, Jim Igo, Interim Executive Director, told Plaintiff that DON position was decided by only one point.

51. Plaintiff asked Igo whether the decision had anything to do with his FMLA and reminded him that FMLA was protected and should not have been a factor.

52. Igo stated that *his FMLA use didn't carry that much weight* and advised Plaintiff that he was "just splitting hairs."

53. Igo went on to state that Plaintiff was set to be the next DON if he "kept up all [his] hard work," However, since Igo has since separated from ODMHSAS, it is unknown how Igo could offer such assurances to Plaintiff.

54. The only other applicant interviewed for the DON position was Sinda Hembree.

55. Hembree's qualifications were inferior to Plaintiff's.

56. Plaintiff has both a Bachelor of Science in Nursing and Bachelor of Arts in Adult Corrections/Psychology. Hembree has only an associate degree.

57. Plaintiff has at least eight years' experience acting in a management role, while Hembree has only one and half years' experience.

58. Additionally, Hembree has a close personal relationship with Alba. This relationship allowed Hembree to received two hours of personal coaching from panel member Alba prior to the interview, in addition to creating an appearance of bias.

59. Since her appointment as DON, Hembree has made numerous attempts to deny or delay Plaintiff's requests for protected FMLA leave.

7

60. Hembree continues her personal relationship with Alba, and frequently texts him with questions about how to perform her job.

## CLAIM ONE – TITLE VII DISCRIMINATION
## ON THE BASIS OF SEX AND/OR GENDER

61. Plaintiff incorporates all previous paragraphs as if set forth herein.

62. Title VII prohibits discrimination on the basis of sex. Included in this prohibition is discrimination on the basis of sexual orientation.

63. Plaintiff is male and identifies as gay.

64. Plaintiff works in a career field traditionally populated by females.

65. The discrimination Plaintiff experienced and continues to experience while employed with Defendant OKDMHSAS is a direct result of his failure to comply with societal expectations of gender norms.

66. Plaintiff applied for the vacant DON position, and he was qualified for that position.

67. Plaintiff interviewed for the position, but OKDMHSAS filled the vacancy with a female employee possessing lesser qualifications than Plaintiff.

68. Plaintiff had previously been the victim of sexual harassment, which was condoned by Alba who sat on the interview panel.

69. Alba, as an employee of Defendant OKDMHSAS had an obligation to address the sexual harassment that was reported by Plaintiff.

70. As a result of Defendant OKDMHSAS's conduct, Plaintiff was forced to endure a hostile work environment, was not promoted or given a raise, was overlooked for promotions for which he was otherwise qualified, has lost wages, and sustained damage to his reputation and career.

8

71. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant OKDMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

72. Defendant OKDMHSAS's conduct is unlawful.

73. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendant OKDMHSAS for its wrongful conduct.

## CLAIM TWO – VIOLATION OF THE
## OKLAHOMA ANTI-DISCRIMINATION ACT

74. Plaintiff incorporates all previous paragraphs as if set forth herein.

75. The incidents describe above that violation Title VII also violation the Oklahoma Anti-Discrimination Act.

76. As a result of Defendant OKDMHSAS's conduct, Plaintiff was forced to endure a hostile work environment, was not promoted or given a raise, was overlooked for promotions for which he was otherwise qualified, has lost wages, and sustained damage to his reputation and career.

77. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant OKDMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

78. Defendant OKDMHSAS's conduct is unlawful.

79. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendant OKDMHSAS's for its wrongful conduct.

## CLAIM THREE - DISCRIMINATION ON THE BASIS
## OF FAMILY MEDICAL LEAVE USE

80.  Plaintiff incorporates all previous paragraphs as if set forth herein.

81.  The Family Medical Leave Act ("FMLA") applies to employers, including state employers, with 50 or more employees.

82.  Defendant OKDMHSAS employs more than 50 employees.

83.  Section 105 of the FMLA and Section 825.220 of the FMLA regulations prohibit, among other things, discriminating or retaliating against an employee for having exercised his rights under the FMLA.

84.  These federal statutes and regulations also prohibit an employer from interfering with or otherwise prohibiting an employee from exercising his rights under the FMLA.

85.  Plaintiff applied and was approved for FMLA because he has a qualifying serious health condition.

86.  Plaintiff was told by Defendant Alba, one of the interview panel members, that his use of FMLA would be considered and have a negative impact on his ability to successfully promote to DON.

87.  Defendant Alba encouraged Plaintiff to discuss his FMLA usage during the interview.

88.  After the interview, Defendant Igo, another panel member, told Plaintiff that *his FMLA usage didn't carry that much weight* and advised Plaintiff that he was "just splitting hairs."

89.  Since federal law prohibits discrimination on the basis of exercising FMLA rights, Plaintiff's use of FMLA should not have been considered or even discussed either during his interview or in panel deliberations following.

90.  The statements by both Defendants Alba and Igo indicate that Plaintiff's rights under federal law were violated by considering his FMLA usage when selecting which candidate to promote to DON.

91.  Defendants Landers and Chaudhry were also on the interview panel that considered Plaintiff's FMLA usage.

92.  Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of the unlawful conduct of all Defendants, a reaction that any reasonable person would have under like circumstances.

93.  Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against all Defendants for their wrongful conduct.

## CLAIM FOUR - EEOC RETALIATION

94.  Plaintiff incorporates all previous paragraphs as if set forth herein.

95.  The federal laws governing the EEOC prohibit an employer from punishing an employee for asserting his rights to be free from employment discrimination and harassment. Examples of exercising EEOC rights include, but are not limited to, filing an EEOC charge, complaint, investigation, or lawsuit or communicating with a supervisor or manager about employment discrimination and harassment. (See https://www.eeoc.gov/laws/types/retaliation.cfm, last visited Feb. 26, 2019)

96.  Plaintiff filed his initial complaint with the EEOC in May 2018.

97.  In September 2018, Plaintiff and OKDMHSAS attended an EEOC-mandated mediation. The mediation failed.

98.  In December 2018, OKDMHSAS announced a newly-created Assistant Director of Nursing ("ADON") position.

99.  Plaintiff applied and was selected to serve as the ADON.

100. This conduct by OKDMHSAS appears to be a blatant attempt to mitigate the damages Dallas has incurred as a result of OKDMHSAS's unlawful conduct.

101. On January 31, 2019, the EEOC issued Plaintiff's Dismissal and Notice of Rights letter.

102. Between the date the Dismissal and Notice of Rights letter was mailed and the date Plaintiff received his copy, Plaintiff attended a training session at OKDMHSAS with at least 15 other employees. One of those employees was Jason Maricle, Human Resources Manager.

103. During the training, Maricle addressed the room and looked primarily at Plaintiff when he stated that "Hannah Thomas [Assistant General Counsel for OKDMHSAS] has never lost an EEOC lawsuit," or words to that effect.

104. Such conduct is considered retaliation and intimidation directed at Plaintiff for exercising his protected rights with the EEOC.

105. Furthermore, such conduct can serve as the basis for additional EEOC complaints.

106. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendants' unlawful conduct, a reaction that any reasonable person would have under like circumstances.

107. Defendants' conduct is unlawful.

108. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendants.

12

WHEREFORE, Plaintiff Dallas Loffi-Lara demands judgement in his favor against the Defendants Oklahoma Department of Mental Health and Substance Abuse Services, an executive agency of the State of Oklahoma; Mike Alba, individually; Katie Landers, individually; Jim Igo, individually; and Aaiza Chaudhry, individually; in an amount in excess of $75,000 for their wrongful, improper, and illegal conduct. Plaintiff Dallas Loffi-Lara requests that he be awarded his lost wages, damages for harm to his reputation, mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind, and punitive damages. Plaintiff Dallas Loffi-Lara further requests that the Court award the costs and attorney's fees associated with this suite, and any and all other relief that the Court deems just and equitable.

Respectfully submitted,

Rachel Bussett, OBA#19769
Patricia A. Podolec, OBA #21325
Katherine Bushnell, Licensed Legal Intern
Bussett Legal Group, PLLC
2201 N. Classen Blvd.
Oklahoma City, OK 73106
Telephone: (405) 605-8073
FAX:  (405) 212-9112
Email: Rachel@BussettLegal.com
         PPodolec@Bussettlegal.com
         Kathy@Bussettlegal.com

*ATTORNEY'S LIEN CLAIMED*
*JURY TRIAL DEMANDED*



**Rachel L. Bussett**
**Patricia Podolec**
**Sheema Anvar**
**Ashley C. Weyland**
Attorneys at Law
432 NW 11th St.
Oklahoma City, OK 73103
Telephone: 405-605-8073

www.BussettLegal.com

February 28, 2019

| | |
|---|---|
| HAND DELIVERED<br>Office of the Attorney General<br>State of Oklahoma<br>313 Ne 21st Street<br>Oklahoma City, OK 73105 | HAND DELIVERED<br>Office of Risk Management<br>Will Rogers Office, Ste. 202<br>2401 N. Lincoln Blvd.<br>Oklahoma City, OK  73105<br><br>RECEIVED<br>RECEPTIONIST<br>FEB 2 8 2019<br>ATTORNEY GENERAL |
| CERTIFIED MAIL 70171450000075210158<br>Oklahoma Department Mental Health and<br>Substance Abuse Services<br>Legal Division<br>2000 N. Classen Blvd.<br>Oklahoma City, OK 73106 | RECEIVED<br>FEB 2 8 2019<br>DCAM RISK MANAGEMENT |

**RE:    Notice of Tort Claim Against the Oklahoma Department of  Mental Health and Substance Abuse Services**

Our Client:    Dallas C. Loffi-Lara
State Entity: Oklahoma Department of Mental Health and Substance Abuse Services/Griffin Memorial Hospital
Date of Incident:  Various

To Whom it May Concern:

Please be advised that Dallas C. Loffi-Lara has retained this office to represent him

in an action against the Oklahoma Department of Mental Health and Substance Abuse

Services ("ODMHSAS") and Griffin Memorial Hospital for damages sustained as a result

of discrimination, harassment, and retaliation he incurred while employed as a Nursing

1


**EXHIBIT**
1

Coordinator II. This claim arises within the Oklahoma Governmental Tort Claims Act, 51 O.S. § 151, et seq. Please contact the undersigned attorney at the Bussett Legal Group, P.L.L.C. to resolve this claim. Tort information: violation of free speech (federal and state); defamation of character; violation of public policy (Burk tort); negligent infliction of emotional distress; intentional infliction of emotional distress; due process violation; retaliation resulting in a hostile work environment; discrimination based on sex and sexual orientation; retaliation for engaging in protected activity (federal and state); constitutional violations (Bosh claim).

**Description of the Incident:**

Dallas Loffi-Lara has been harassed, discriminated against, and retaliated against based on his sexual orientation, gender, and exercise of his rights under the Family and Medical Leave Act ("FMLA"). Additionally, Dallas has been – and continues to be – harassed, threatened, and retaliated against for exercising his rights with the Equal Employment Opportunity Commission ("EEOC"). The conduct of OKDMHSAS violates Title VII of the Civil Rights Act, the FMLA, and the Oklahoma Anti-Discrimination Act ("OADA").

An EEOC complaint was filed on Dallas' behalf on or about May 21, 2018, within 180 days of the discriminatory conduct performed by the employer. The charge of discrimination was filed with the EEOC on June 18, 2018. The Dismissal and Notice of Rights letter was issued on January 31, 2019.



## FACTUAL SUMMARY

Since May 4, 2010, Dallas has been employed with Griffin Memorial Hospital, a part of OKDMHSAS. He also had one year of state government service prior to joining OKDMHSAS. OKDMHSAS employs more than 50 employees.

All Dallas' Performance Management Process ("PMP") reviews have been graded as "exceeds standards." Beginning in 2015, Dallas served as the Interim DON until Mike Alba was hired for that position. Both prior to and after Alba's hire, Dallas was advised by both then-Executive Director Lori Jordan and Alba that he was next in line for the DON position once Alba retired "soon."

OKDMHSAS has an "Equal Employment Opportunity and Non-Discrimination" policy. The policy incorporates the protections of Title VII of the Civil Rights Act, among other statutes. The policy specifically prohibits harassment and discrimination on the basis of sex. Supervisors are responsible for reporting complaints of discrimination to the Civil Rights Unit of OKDMHSAS and implementing corrective actions for discriminatory conduct.

Dallas identifies as the member of the LGBTQ+ community. On one occasion, Dallas was held in a conference room by then-Executive Director Randy May. May demanded to know Dallas' "gay name," which consisted of the first street he ever lived on and the first dog he ever owned. The incident was reported and investigated. Thereafter, May was allowed to resign in lieu of termination, which preserved his retirement benefits.

On or about February 2, 2016, Dallas was sexually harassed by co-worker Marty Wilson. Wilson called Dallas derogatory names regarding his sexual orientation. Dallas notified Alba, then supported his complaint with witness statements. Alba told Dallas that he and Wilson, who are

3

both older than Dallas, were "from the same generation" and that Dallas "should just let it go." On information and belief, Wilson was not disciplined. Additionally, Alba's suggestion to "just let it go" and his condoning the behavior based on his "generation" indicate Alba's willingness to allow, rather than prohibit, discriminatory conduct in the workplace. Furthermore, Alba was frequently found to be extremely affectionate with female employees, and Alba did not hold the females accountable to the same standards as he did Dallas.

In September 2016 and September 2017, Dallas applied and was approved for leave under the FMLA as a result of a serious health condition. All Dallas' FMLA leave was scheduled and approved in advance by Alba. However, on numerous occasions, Alba advised Dallas that he "should be glad [he had] FMLA protections," or words to that effect.

In March 2018, Alba announced his retirement. On March 14, 2018, the DON position was announced, and Dallas submitted his application the same day. Before he applied, Alba said to Dallas, "I'm not telling you to not put in for the [DON] position, but do you seriously think that your leave will not be considered?" Dallas asked whether Alba was referring to his approved FMLA leave, and Alba said, "Yes, they need someone that can be here five days a week." Alba continued to discuss Dallas' use of FMLA as being a pivotal factor in the decision-making process for the next DON.

The following day, Dallas talked to Alba again about his comments regarding his leave. Alba said, "I think you are a contender, Dallas. But I think the fact that you are not here a lot does not help you." Alba further encouraged Dallas to discuss his use of FMLA during his interview for the DON position.

4

OKDMHSAS policy 9.1 "Application and Selection Process" sets out the procedures for conducting interviews. Procedure 2c states (emphasis added):

The structured interview process shall incorporate the use of an interview panel. The interview panel **shall** be comprised of at least one female, one male and one member of Minority Race or Ethnicity [defined in the policy as "Black, Hispanic, Asian or Pacific Islander and American Indian or Alaskan Native"]. One of these individuals may be designated as the chairperson of the interview by the Hiring Authority. The hiring authority **shall** select interview panel members who are knowledgeable about the skills needed to perform the duties of the vacant position and have successfully completed the E-Learning course "Interview and Selection Process". [sic] The immediate supervisor of the vacant position should be a member of the interview panel unless an unstructured interview is anticipated.

The interview panel for the DON position consisted of four people: Katie Landers, Director of Management Support Services; Jim Igo, Outgoing Executive Director; Aaiza Chaudhry, Director of Consumer Services; and Mike Alba, Outgoing-DON.

The interview panel did not meet the requirements as set out in OKDMHSAS policy. The policy states that the panel members **shall** have completed the "Interview and Selection Process" course, but none of the panel members had completed the course. The policy also states that the interview panel **shall** be diversified by both gender and race or ethnicity. While it appears that the panel did meet the gender diversity requirement, it is unclear whether the panel included a member of a minority race or ethnicity.

There were additional problems with the interview panel as well. Two of the members of the panel had either shown or had cause to act in a non-neutral manner towards Dallas. Additionally, one member of the panel was not knowledgeable as to the vacant DON position.

First, Alba was not a neutral panel member. Alba had previously demonstrated his unwillingness to prohibit illegal sexual harassment after complaints lodged by Dallas. Alba had also told Dallas that his use of federally-protected FMLA leave would be a factor in his application for the DON position. Additionally, Alba was known to treat female employees more favorably than males.

Second, Landers was not a neutral panel member. She had cause to be biased against Dallas because he had previously reported a relationship between Landers' sister and a nurse under his supervision because the relationship violated agency policy.

Finally, Chaudhry was not a qualified panel member, since she had been at Griffin Memorial Hospital less than two weeks prior to the interview. As a result, Chaudhry did not have time to obtain the requisite knowledge of the skills needed to be a successful DON at Griffin Memorial Hospital.

After the DON interview in March 2018, Jim Igo, Interim Executive Director, told Dallas the DON position was decided by only one point. Dallas asked Igo whether the decision had anything to do with his FMLA and reminded him that FMLA was protected and should not have been a factor. Igo stated that it didn't carry that much weight and advised Dallas that he was "just splitting hairs." Igo went on to state that Dallas was set to be the next DON if he "kept up all [his] hard work," However, since Igo has since separated from ODMHSAS, it is unknown how Igo could offer such assurances to Dallas.

6

The only other applicant interviewed for the DON position was Sinda Hembree. Hembree's qualifications were inferior to those of Dallas. Dallas has both a Bachelor of Science in Nursing and Bachelor of Arts in Adult Corrections/Psychology. Hembree has only an associate degree. Dallas has at least eight years' experience acting in a management role, while Hembree has only one and half years' experience. Additionally, Hembree has a close personal relationship with Alba. This relationship allowed Hembree to received two hours of personal coaching from panel member Alba prior to the interview, in addition to creating an appearance of bias.

Since her appointment as DON, Hembree has made numerous attempts to deny or delay Dallas' requests for protected FMLA leave. Hembree continues her personal relationship with Alba, and frequently texts him with questions about how to perform her job.

## DISCRIMINATION ON THE BASIS OF SEX AND/OR GENDER

Title VII prohibits discrimination on the basis of sex. Included in this prohibition is discrimination on the basis of sexual orientation. This type of discrimination is also prohibited by the OADA. Dallas identifies as a member of the LGBTQ+ working as a nurse, a field traditionally populated by females. The discrimination Dallas experienced and continues to experience is a direct result of his failure to comply with societal expectations of gender norms.

Dallas applied for the vacant DON position, and he was qualified for that position. Dallas interviewed for the position, but OKDMHSAS filled the vacancy with a person possessing lesser qualifications than Dallas. Dallas had previously been the victim of sexual harassment, which was condoned by Alba who sat on the interview panel. When considered together, these facts strongly indicate that Dallas was yet again the victim of discrimination on the basis of sex and his sexual orientation.

7

Dallas suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of OKDMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances. OKDMHSAS's conduct is unlawful.

## DISCRIMINATION ON THE BASIS OF FAMILY MEDICAL LEAVE USE

FMLA applies to employers, including state employers, with 50 or more employees. Section 105 of the FMLA and Section 825.220 of the FMLA regulations prohibit, among other things, discriminating or retaliating against an employee for having exercised his rights under the FMLA. These federal statutes and regulations also prohibit an employer from interfering with or otherwise prohibiting an employee from exercising his rights under the FMLA.

Dallas applied and was approved for FMLA because he has a qualifying serious health condition. Dallas was told by Alba, one of the interview panel members, that his use of FMLA would be considered and have a negative impact on his ability to successfully promote to DON. Alba encouraged Dallas to discuss his FMLA usage during the interview. Additionally, after the interview, Igo, another panel member, told Dallas that his FMLA usage didn't carry that much weight and advised Dallas that he was "just splitting hairs." Since federal law prohibits discrimination on the basis of exercising FMLA rights, Dallas' use of FMLA should not have been considered or even discussed either during his interview or in panel deliberations following. The statements by both Alba and Igo indicate that the OKDMHSAS violated Dallas' rights under federal law by considering his FMLA usage when selecting which candidate to promote to DON.

Dallas suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of

8

OKDMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances. OKDMHSAS's conduct is unlawful.

## EEOC RETALIATION

The federal laws governing the EEOC prohibit punishing an employee for asserting his rights to be free from employment discrimination and harassment. Examples of exercising EEOC rights include, but are not limited to, filing an EEOC charge, complaint, investigation, or lawsuit or communicating with a supervisor or manager about employment discrimination and harassment. (See https://www.eeoc.gov/laws/types/retaliation.cfm, last visited Feb. 26, 2019)

Dallas filed his initial complaint with the EEOC in May 2018. In September 2018, Dallas and OKDMHSAS attended an EEOC-mandated mediation. The mediation failed. In December 2018, OKDMHSAS announced a newly-created Assistant Director of Nursing ("ADON") position. Dallas applied and was selected to serve as the ADON. This conduct by OKDMHSAS appears to be a blatant attempt to mitigate the damages Dallas has incurred as a result of OKDMHSAS's unlawful conduct.

The EEOC issued Dallas' Dismissal and Notice of Rights letter on January 31, 2019. Between the date the Dismissal and Notice of Rights letter was mailed, and the date Dallas received his copy, Dallas attended a training session at OKDMHSAS with at least 15 other employees. One of those employees was Jason Maricle, HR Manager. During the training, Maricle addressed the room and looked primarily at Dallas when he stated that "Hannah Thomas [Assistant General Counsel for OKDMHSAS] has never lost an EEOC lawsuit," or words to that effect. Such conduct is considered retaliation and intimidation directed at Dallas for exercising his protected rights with the EEOC.

Dallas suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of OKDMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances. OKDMHSAS's conduct is unlawful. Furthermore, this conduct can serve as the basis for additional EEOC complaints.

**Names of any and all known witnesses to the incident:**

1. Cathy Olson
2. Mongo Allen
3. Elizabeth Hubl
4. Modupe Akande

**Location (Address), Date and Time of the Incident:** various dates at Griffin Memorial Hospital

**Claimant's Name, Address, Phone Number:**

Dallas Loffi-Lara

███████████████████████

**Estimate of the Damages:** In excess of $400,000.00

**Parties/Agencies Involved:** Oklahoma Department of Mental Health and Substance Abuse Services/Griffin Memorial Hospital and Dallas C. Loffi-Lara.

**Name, Address, Telephone Number of Authorized Agent to Settle Claim:** Bussett Legal Group, LLC, 432 NW 11th Street; Oklahoma City, Oklahoma, 73103; Phone: (405) 605-8073; Fax (405)212-9112

If you have any questions or need any additional information, please do not hesitate to contact me. I can be reached at the number listed above or via email at Rachel@bussettlegal.com. Please always include Crystal at Crystal@Bussettlegal.com in all correspondence.

Sincerely,

Rachel Bussett

10

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE  564-2018-01484

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). **REMEMBER**, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. **Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)**

## 1. Personal Information

Last Name: **Loffi-Lara**    First Name: **Dallas**    MI: **C**

Street or Mailing Address: ▇▇▇▇▇▇    Apt or Unit #: _____

City: ▇▇▇▇▇    County: **Cleveland**    State: **OK**    Zip: ▇▇▇▇▇

Phone Numbers: Home: (▇▇▇    Work: (▇▇▇

Cell: (▇▇▇    Email Address: ▇▇▇▇▇▇

Date of Birth: ▇▇▇▇    Sex: ✔Male ☐Female    Do You Have a Disability? ☐Yes ✔No

**Please answer each of the next three questions.**    i. Are you Hispanic or Latino? ☐Yes ✔No

ii. What is your Race?    Please choose all that apply. ☐American Indian or Alaskan Native  ☐Asian  ✔White
☐Black or African American  ☐Native Hawaiian or Other Pacific Islander

iii. What is your National Origin (country of origin or ancestry)? _____

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: ▇▇▇▇    Relationship: **Spouse**

Address ▇▇▇▇    City: ▇▇▇▇    State: **OK**    Zip Code: ▇▇▇▇

Home Phone: (▇▇▇▇    Other Phone: ▇▇▇▇

## 2. I believe that I was discriminated against by the following organization(s): (Check those that apply)

✔Employer  ☐Union  ☐Employment Agency  ☐Other (Please Specify) _____

**Organization Contact Information** (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) **If more than one employer is involved, attach additional sheets.**

Organization Name: Oklahoma Dept. of Mental Health & Substance Abuse Services/Griffin Memorial Hospital

Address: **900 E. Main**    County: **Cleveland**

City: **Norman**    State: **OK** Zip: **73071**    Phone: (**405**) **573-6690**

Type of Business: **Hospital**    Job Location if different from Org. Address: **Griffin Memorial Hospital**

Human Resources Director or Owner Name: **Pam Mulhvaney**    Phone: (**405**) **248-9049**

Number of Employees in the Organization at All Locations: Please Check (✓) One

☐Fewer Than 15  ☐15 – 100  ☐101 – 200  ☐201 – 500  ✔More than 500

## 3. Your Employment Data (Complete as many items as you are able.) Are you a federal employee? ☐Yes ✔No

Date Hired: **05/04/2010**    Job Title At Hire: **Nursing Coordinator II**

Pay Rate When Hired: **58,344.00/Yearly**    Last or Current Pay Rate: **58,344.00/Yearly**

Job Title at Time of Alleged Discrimination: **Nursing Coordinator II**  Date Quit/Discharged: **N/A**

Name and Title of Immediate Supervisor: **Sinda Hembree Rhodes RN**

If Job Applicant, Date You Applied for Job **03/14/2018**  Job Title Applied For **Director of Nursing**

**EXHIBIT 2**

1

**4.  What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

[ ] Race  [✔] Sex  [✔] Age  [ ] Disability  [ ] National Origin  [ ] Religion  [✔] Retaliation  [ ] Pregnancy  [ ] Color (typically a difference in skin shade within the same race) [ ] Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify:_____

If you checked genetic information, how did the employer obtain the genetic information?_____

_____

Other reason (basis) for discrimination (Explain):  Use of Family Medical Leave _____

**5.  What happened to you that you believe was discriminatory?**  Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you.  **Please attach additional pages if needed.**
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

**A.  Date:** 03/22/2018 _____   **Action:** See Attached _____

_____

**Name and Title of Person(s) Responsible:** _____

**B.  Date:** _____   **Action:** _____

_____

**Name and Title of Person(s) Responsible** _____

**6.  Why do you believe these actions were discriminatory? Please attach additional pages if needed.**
See Attached
_____

_____

**7.  What reason(s) were given to you for the acts you consider discriminatory?  By whom?  His or Her Job Title?**
See Attached
_____

**8. Describe who was in the same or similar situation as you and how they were treated.  For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance?  Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination.  For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on.  Use additional sheets if needed.**

**Of the persons in the same or similar situation as you, who was treated *better* than you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. Sinda Hembree Rhodes , Caucasian female, promoted to Director of Nursing, Mike Abla previous Director of Nursing had a deeply personal relationship with Sinda Hembree Rhodes | | | |

due to her sex, extremely flirtatious, inappropriate, and gave her personal coaching for 2 hours prior to our interview which I did not receive. Witnesses available.
_____

**B.** _____

_____

2

**Of the persons in the same or similar situation as you, who was treated *worse* than you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A._____

_____

B._____

_____

**Of the persons in the same or similar situation as you, who was treated the *same* as you?**

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|

A._____

_____

B._____

See Attached List Provided
_____

Answer questions 9-12 **only** if you are claiming discrimination based on disability.  If not, skip to question 13.  Please tell us if you have more than one disability.  Please add additional pages if needed.

9.  Please check all that apply:
☐ Yes, I have a disability
☐ I do not have a disability now but I did have one
☐ No disability but the organization treats me as if I am disabled

10.  What is the disability that you believe is the reason for the adverse action taken against you?  Does this disability prevent or limit you from doing anything?  (e.g., lifting, sleeping, breathing, walking, caring for yourself, working, etc.).

_____
_____

11.  Do you use medications, medical equipment or anything else to lessen or eliminate the symptoms of your disability?
☐ Yes ☐ No
If "Yes," what medication, medical equipment or other assistance do you use?

_____

12.  Did you ask your employer for any changes or assistance to do your job because of your disability?
☐ Yes ☐ No
If "Yes," when did you ask? _____ How did you ask (verbally or in writing)? _____

Who did you ask?  (Provide full name and job title of person)
_____

Describe the changes or assistance that you asked for: _____
_____
_____

How did your employer respond to your request? _____
_____

3

13. Are there any witnesses to the alleged discriminatory incidents?  If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|-----------|-----------|------------------------|-----------------------------------------------|
| A. Cathy Olson | Admin Tech. | 204 Summit Crest Lane, Norman OK 73071. She will provide statements to confirm an inappropriate workplace relationship occurred to include text messages on a work cell phone with Mike Abla previous Director of Nursing and speak to his retaliatory nature. | |
| B. | | | |

See Attached List Provided

14. Have you filed a charge previously on this matter with the EEOC or another agency?  ☐ Yes  ☑ No

15. If you filed a complaint with another agency, provide the name of agency and the date of filing:  N/A

16. Have you sought help about this situation from a union, an attorney, or any other source?  ☑ Yes  ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?
Bussett Legal Group, PLLC, Rachel Bussett & Kelly Hensley, 432 NW 11th Street, Oklahoma City OK 73103

Contacted on 04/12/2018, I retained them to represent me on that day. Phone Number: 405-605-8073

**Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.**  If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws.  If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1.  If you want to file a charge, you should check Box 2.

BOX 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge.  I understand that by checking this box, I have not filed a charge with the EEOC.  I also understand that I could lose my rights if I do not file a charge in time.

BOX 2 ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name.  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_Dallas Loffi-Lara_
Signature

05/05/2018
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:

1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626. 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters.
5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION.  Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

Dallas Loffi-Lara



RE: EEOC

Responses for Questions #5, #6, #7

I was not promoted to the position of Director of Nursing with Griffin Memorial Hospital/Oklahoma Dept of Mental Health and Substance Abuse Services because of my use of Family Medical Leave, gender, and sexual orientation.

11/14/2015 I initially interviewed for the Director of Nursing position while I was the Interim Director of Nursing since 09/25/2015. I was initially told by the current Executive Director at the time Lori Jordan that she wanted me to be the Director of Nursing but wanted to bring Mike Abla RN in to assist me, teach me and prep me for the Director of Nursing role, he began in Feb 2016, His first day of business as the Director of Nursing with Griffin Memorial Hospital he pulled me into his office and told me that he was here to simply train me with the knowledge he had and prep me for the Director of Nursing role as he prepared to retire from Oklahoma Dept of Mental Health and Substance Abuse Services, this was even further confirmed by an email received from Lori Jordan Executive Director at the time and acting as an agent for the Oklahoma Dept. of Mental Health and Substance Abuse Services stated ". I appreciate you saying those things and it is still my hope that when Mike decides to part ways with GMH to retire, that you will have enough nerves left (stress wise) to take on the job from what you have gained on top of your own skills.".

In March 2018, Mike Abla RN Director of Nursing announced he was retiring and the Director of Nursing position for Griffin Memorial Hospital was posted and I applied March 14th, 2018. Prior to applying, Mike Abla was in my office and stated "I am not telling you to not put in for the director of nursing position but do you seriously think that your leave will not be considered?" I asked him if he was referring to my FML approved leave and he stated "Yes, they need someone that can be here five days a week". He continued to discuss my protected leave as being a pivotal factor in the decision-making process for the next Director Of Nursing, even though I explained to him that all my leave had been scheduled in advance and that I in fact hadn't had to use that much FML leave because of current health issues that were keeping me from participating in additional steroid therapy. I reminded him that he had hired a nurse to work one of my scheduled shifts and I had simply been entering leave requests in advance which he had approved, he still stated that I would need to cancel my leave requests to be seriously considered for the position. I later recorded Mike Abla and I asked him if he thought I was not a contender for the position and he replied, "I think you are a contender Dallas but I think the fact that you are not here a lot does not help you". "When you get interviewed, you need to talk about it (referring to my health issues which are protected by Family Medical Leave) and then confirms that all my leave was scheduled. He states that my leave should be cancelled if I want the interview panel to seriously take me into consideration. He continues to tell me that it would help if I discussed in my interview why I was talking my leave. He confirms that I "shoot straight" with people and that eludes to the fact that if I would tell them about my chronic health issues it would improve my chances of becoming the next Director of Nursing.

I also believe I was also discriminated against because of my gender and sexual orientation. In Feb 2016 I was called derogatory names by an employee Marty Wilson CRS regarding my sexual orientation, I notified the employees direct supervisor and mine, Mike Abla. I followed up with email

with witness statements, Mike Abla told me that Marty and he were from the same generation and I "Should just let it go". No disciplinary action was taken against Marty Wilson. I believe Mike Abla carried his generational biases into my interview, influencing his decision to promote a nurse that was not as qualified as me, in fact per the qualifiers of the Director of Nursing job posting should not have been a selected candidate because of lack of experience and whom only has an associates degree in nursing. Nurse Sinda Hembree Rhodes was known to have a personal relationship with Mike Abla that can substantiated through witnesses as well as text messages between them on a work cell phone that is unprofessional. Mike Abla was frequently extremely affectionate with female peers and did not hold them accountable to the same standards he did me. Witnesses can also make statements to his overly affectionate nature towards female peers and his labile tendencies to overlook use of leave or task female peers with equal responsibilities even though we held the same job title.

Mike Abla was allowed to sit on my interview panel and influence Katie Landers, Jim Igo, & Aaiza Chaudhry who were also panel members on my interview. Per policy DMHSAS 9.1 Application and Selection Process issued August 1, 1998, revised: January 11,2001, September 3, 2002, August 4, 2003, effective May 01, 2001 Approved by Terri White states under procedure 2 section c.:

c. The structured interview process shall incorporate the use of an interview panel. The interview panel shall be comprised of at least one female, one male and one a member of a Minority Race or Ethnicity. One of these individuals may be designated as the chairperson of the interviews by the Hiring Authority The hiring authority shall select interview panel members who are knowledgeable about the skills needed to perform the duties of the vacant position and have successfully completed the E-Learning course "Interview and Selection Process". The Immediate supervisor of the vacant position should be a member of the interview panel unless an unstructured interview is anticipated.

None of the members of the interview panel completed the E-Learning course "Interview Selection Process as required by policy DMHSAS 9.1, I have copies of their training records for validation. It also states in section c. that one of the members of the panel shall be of a minority race or ethnicity. Per the definitions of the same policy it states that:

"Minority Race or Ethnicity" - Black, Hispanic, Asian or Pacific Islander and American Indian or Alaskan Native.

None of the panel members were a member of the Black, Hispanic, Asian, , Pacific Islander, American Indian, or Alaskan Native minority race or ethnicity as required by policy DMHSAS 9.1.

Policy DMHSAS 9.1 Application and Selection Process also states that section 2, c. that members of the interview panel shall be knowledgeable about the skills needed to perform the duties of the vacant position. Aaiza Chaudhry was recently hired by Griffin Memorial Hospital as the Director of Consumer Services, she had been in her position actively less than 2 weeks prior to my interview, she in no way had the knowledge of the skills needed to perform as the Director of Nursing.

Question 13: Witnesses

Mongo Allen, Previous Director of Consumer Empowerment, 405-315-0855, He has also filed an EEOC complaint on Griffin Memorial Hospital, Oklahoma Dept. of Mental Health and Substance Abuse Services and will speak to Mike Abla & Katie Landers (Members of my interview panel) discriminatory biases and punitive behavior to those under Family Medical Leave Acts protections.

Elizabeth Hubl, Previous Registered Nurse III, 405-834-4749, She also has filed an EEOC compliant on Griffin Memorial Hospital, Oklahoma Dept. of Mental Health and Substance Abuse Services and will speak to Mike Abla's discriminatory behavior and punitive nature to those under Family Medical Leave Acts protections.

Modupe Akande, Registered Nurse III, 405-514-8882, She will provide statements to Mike Abla's abuse of policy and failure to follow federal protections to those covered by FMLA.  She will provide statement to Mike Abla's personal relationship with Sinda Hembree Rhodes and preferential treatment to those whom are Caucasian and Female.

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 564-2018-01484 |

| Oklahoma Attorney General's Office, Office of CR Enforcement | | and EEOC |
|---|---|---|
| State or local Agency, if any | | |

| Name (indicate Mr., Ms., Mrs.)<br>**Dallas Loffi-Lara** | Home Phone (Incl. Area Code)<br>( | Date of Birth |
|---|---|---|
| Street Address | City, State and ZIP Code | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**Oklahoma Dept. of Mental Health & Substance Abuse Services/Griffin Memorial Hospital** | No. Employees, Members<br>**Over 500** | Phone No. (Include Area Code)<br>**(405) 248-9049** |
|---|---|---|
| Street Address<br>**900 E. Main   Norman, Oklahoma 73071** | City, State and ZIP Code | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Street Address | City, State and ZIP Code | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☐ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ GENETIC INFORMATION
☒ OTHER *(Specify)*  **Sexual orientation**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest                    Latest

☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

1. I was discriminated based upon my gender and sexual orientation in violation of Title VII of the Civil Rights Act of 1964, as amended. Specifically, I was called derogatory names specifically targeting my sexual orientation, such as fag and bitch, by employee, Marty Wilson regarding my sexual orientation. I notified the employee's direct supervisor and mine, Mika Abla. Ms. Abla told me that he and Mr. Wilson were from the same generation, and I should "just let it go."

2. I was retailed against contrary to Americans with Disabilities Act of 1990 as a result of an injury to my back I received while in the course and scope of employment. Specifically, my employer did not allow me as a qualified employee reasonable accommodations in the form of taking leave to visit the doctor.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.<br>I declare under penalty of perjury that the above is true and correct. | NOTARY – When necessary for State and Local Agency Requirements<br><br>I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
|---|---|
| 6/18/18        *Dallas Loffi-Lara /KM*<br>Date        Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA<br>☒ EEOC | 564-2018-01484 |

| Oklahoma Attorney General's Office, Office of CR Enforcement | and EEOC |
|---|---|
| *State or local Agency, if any* | |

3. **I was retaliated against when I was denied the Director of Nursing Position, as a result of the leave I took to seek medical care for my disability, contrary to the Americans with Disabilities Act of 1990.**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| 6/18/18          *Dallas Hoffi-Loa / KH*<br>Date                     Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>*(month, day, year)* |

CP Enclosure with EEOC Form 5 (11/09)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

**1.** **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

**2.** **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

**3.** **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

**4.** **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

**5.** **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

### NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

### NOTICE OF NON-RETALIATION REQUIREMENTS

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Oklahoma City Area Office**

215 Dean A. McGee Avenue, Suite 524
Oklahoma City, OK 73102
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Oklahoma City Status Line: (866) 408-8075
Oklahoma City Direct Dial: (405) 231-4911
TTY (405) 231-5745
FAX (405) 231-4140

August 28, 2018

Crystal Bussett, Paralegal
For the Firm
Bussett Law Group
432 MN.W. 11ᵗʰ Street
Oklahoma City, OK 73103

Dear Ms. Bussett:

     In Re:  EEOC Charge No.: 564 2018 01484
     Dallas C. Loffi-Lara v. Oklahoma Dept. Mental Health & Substance Abuse Services

     Enclosed please find a Confirmation Notice for the above-referenced mediation conference on the charge of employment discrimination on file with our office. A confidentiality agreement and an agreement to mediate will be executed by the parties in attendance at the mediation conference.

     Please contact me if you need an accommodation to attend the mediation conference. Accommodation requests must be made at least seven (7) days prior to the date mediation is scheduled to occur.

I look forward to assisting you in resolving the above-referenced Charge of Discrimination. Please come prepared to discuss how the claim may be resolved and with the authority to resolve the claim. If you have any questions, I can be reached at (405) 231-4370.

Sincerely,

Gwen A. Sneed
ADR Mediator

Enclosures



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Oklahoma City Area Office**

215 Dean A. McGee Avenue, Suite 524
Oklahoma City, OK 73102
National Contact Center: (800) 669-4000
National Contact Center TTY: (800) 669-6820
Oklahoma City Status Line: (866) 408-8075
Oklahoma City Direct Dial: (405) 231-4911
TTY (405) 231-5745
FAX (405) 231-4140

IN THE MATTER OF THE MEDIATION BETWEEN
**DALLAS C. LOFFI-LARA**
*vs*
**OKLAHOMA DEPARTMENT OF MENTAL HEALTH & SUBSTANCE ABUSE
SERVICES (ODMHSAS)**
**EEOC CHARGE NO. 564 2018 01484**

### MEDIATION CONFIRMATION NOTICE

This is to inform you that I have scheduled a mediation conference for the date, time, and
location indicated below:

| | |
|---|---|
| **Date:** | **September 17, 2018** |
| **Time:** | **9:00 a.m.** |
| **Location:** | **U.S. Equal Employment Opportunity Commission** |
| | **Oklahoma City Area Office** |
| | **215 Dean A. McGee, 4th Floor, Room 400** |
| | **Oklahoma City, OK  73102** |

Parties are reminded that only persons with authority to resolve the charge or their
representatives, if any, are permitted to attend the conference. No spouses, witnesses, children,
or uninvolved parties will be admitted. Parties needing special assistance in their native
language should bring their own interpreter.

Any settlement document signed as a result of the mediation process is legally binding on the
parties and enforced by the Commission. All disclosures made during the mediation shall be
treated as confidential, except that imminent or actual threats of harm to one's self or others will
be reported. If a settlement is reached as a result of the mediation, a copy of the settlement
agreement will be forwarded to the ADR Mediator. As noted in the confidentiality agreement,
this information is reported to EEOC for purposes of providing aggregate data for Alternative
Dispute Resolution Program evaluation purposes.

If you have any questions, do not hesitate to call me.

Sincerely,

Gwen A. Sneed
ADR Mediator
Office: (405) 231-4370
Fax:    (405) 231-4506
Email: gwen.sneed@eeoc.gov

**MEDIATION CONFIRMATION NOTICE**
**ADR MEDIATOR(S):        GWEN SNEED**
**EEOC CHARGE NO.:     564 2018 01484**
**PAGE 2**

**The following individuals will attend the mediation conference:**

**Name**                                    **Title**

_____        _____

_____        _____

_____        _____

**PLEASE NOTE THAT PHOTO ID IS REQUIRED TO ENTER THE BUILDING AND CELL PHONES MAY BE REMOVED FROM YOU UPON ENTRY. ALSO NOTE THAT IF YOU WILL TRANSPORT A LAPTOP, NOTEBOOK, OR OTHER PORTABLE ELECTRONIC DEVICES, YOU MUST NOTIFY ME PRIOR TO YOUR ARRIVAL SO THAT I MAY ARRANGE TO ESCORT YOU THROUGH SECURITY CHECKPOINT.**

An individual attending the mediation conference having a disability requiring reasonable accommodation or has another need that must be addressed in order to participate in the conference must identify below:

_____Yes                    \_\_\_\_\_No

If so, please describe the accommodation and/or need

---

Please mail to:        Gwen A. Sneed
                       **ADR Mediator**
                       **U.S. Equal Employment Opportunity Commission**
                       **Oklahoma City Area Office**
                       **215 Dean A. McGee, Room 501**
                       **Oklahoma City, OK  73102**
                       Email: gwen.sneed@eeoc.gov

                       **OR**
                       **Fax to: (405) 231-4506**

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To:  **Dallas C. Loffi-Lara** <br> ████████████████ | From:  **Oklahoma City Area Office** <br> **215 Dean A. McGee Avenue** <br> **Suite 524** <br> **Oklahoma City, OK 73102** |

| ☐ | On behalf of person(s) aggrieved whose identity is *CONFIDENTIAL (29 CFR §1601.7(a))* | |
|---|---|---|
| EEOC Charge No. <br> **564-2018-01484** | EEOC Representative <br> **James E. Habas,** <br> **Investigator** | Telephone No. <br> **(405) 231-5485** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐  Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*[signature]*                    1/31/2019

Enclosures(s)                **Holly Waldron Cole,** <br> **Area Office Director**             *(Date Mailed)*

cc:
| | |
|---|---|
| **Hannah A. Hawkins** <br> **HR Director** <br> **OKLAHOMA DEPT. OF MENTAL HEALTH &** <br> **SUBSTANCE ABUSE** <br> **2000 N. Classen, Suite E600** <br> **Oklahoma City, OK 73106** | **Patricia A. Podolec** <br> **BUSSETT LEGAL GROUP, PLLC** <br> **432 Nw 11th St.** <br> **Oklahoma City, OK 73103** |