FILED IN DISTRICT COURT
OKLAHOMA COUNTY
SEP 1 7 2019
RICK WARREN
COURT CLERK
40.

IN THE DISTRICT COURT FOR THE STATE OF OKLAHOMA
OKLAHOMA COUNTY

| | |
|---|---|
| (1) DALLAS LOFFI-LARA, <br><br>       PLAINTIFF <br> v. <br><br> (1) OKLAHOMA DEPARTMENT OF MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES, an agency of the State of Oklahoma; <br> (2) MIKE ALBA, individually; <br> (3) KATIE LANDERS, individually; <br> (4) JIM IGO, individually; <br> (5) AAIZA CHAUDHRY, individually; and <br> (6) SINDA HEMBREE, individually; <br>       DEFENDANTS | CASE NO. CJ-2019-2409 <br><br> JURY TRIAL DEMANDED <br> ATTORNEY'S LIEN CLAIMED |

## PLAINTIFF'S FIRST AMENDED PETITION

COMES NOW the Plaintiff, Dallas Loffi-Lara, by and through his attorneys at Bussett Legal Group, pursuant to 12 O.S. § 2015, and for his First Amended Petition, alleges and states as follows:

1. Plaintiff Dallas Loffi-Lara is a resident of Cleveland County and a citizen of the State of Oklahoma.

2. Defendant Oklahoma Department of Mental Health and Substance Abuse Services ("ODMHSAS") is an executive agency of the State of Oklahoma. ODMHSAS owns and operates Griffin Memorial Hospital ("Hospital"), located in Norman, Cleveland County, Oklahoma.

3. On information and belief, Defendant Mike Alba is a resident of Cleveland County and citizen of the State of Oklahoma.

4. On information and belief, Defendant Katie Landers is a resident of Cleveland County and citizen of the State of Oklahoma.

1

EXHIBIT 3

5. On information and belief, Defendant Jim Igo is a resident of Cleveland County and citizen of the State of Oklahoma.

6. On information and belief, Defendant Aaiza Chaudhry is a resident of Cleveland County and citizen of the State of Oklahoma.

7. On information and belief, Defendant Sinda Hembree is a resident of Cleveland County and citizen of the State of Oklahoma.

8. During all times relevant to this action, Plaintiff and the individual Defendants were employees of the Hospital.

9. On information and belief, all of the acts complained of occurred in Cleveland County in the State of Oklahoma.

10. Under 51 O.S. § 163(A), venue is proper in Oklahoma County.

## ADMINISTRATIVE REQUIREMENTS PRIOR TO FILING

11. Plaintiff served a tort claim on ODMHSAS via hand delivery on February 28, 2019, and via certified mail on March 6, 2019. The tort claim was deemed denied by operation of law effective June 16, 2019.

12. Plaintiff filed an initial claim with the Equal Employment Opportunity Commission ("EEOC") on May 21, 2018. His charge was issued on June 18, 2018, and his Dismissal and Notice of Rights letter was issued on January 31, 2019.

13. Plaintiff filed a second claim with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2019. His charge was issued on June 28, 2018, and his Dismissal and Notice of Rights letter was issued on July 31, 2019.

## STATEMENT OF FACTS

14. This is a claim for damages resulting from harassment, discrimination, and retaliation against Plaintiff based on his sexual orientation, gender, and exercise of his rights under the Family and Medical Leave Act ("FMLA") and with the Equal Employment Opportunity Commission ("EEOC").

15. The conduct of the Defendants violates Title VII of the Civil Rights Act, the FMLA, the Oklahoma Anti-Discrimination Act ("OADA"), and the EEOC.

16. Plaintiff has been employed with Griffin Memorial Hospital, a part of ODMHSAS since May 4, 2010.

17. ODMHSAS employs more than fifty (50) employees.

18. Each of Plaintiff's Performance Management Process ("PMP") reviews have been graded as "exceeds standards," including his most recent on issued September 6, 2019.

19. Beginning in 2015, Plaintiff served as the Interim Director of Nursing "(DON") until Defendant Mike Alba was hired for that position.

20. Both prior to and after Alba's hire, Plaintiff was advised by both then-Executive Director Lori Jordan and Alba that Plaintiff was next in line for the DON position once Alba retired "soon."

21. ODMHSAS has an "Equal Employment Opportunity and Non-Discrimination" policy. The policy incorporates the protections of Title VII of the Civil Rights Act, among other statutes. The policy specifically prohibits harassment and discrimination on the basis of sex.

22. Supervisors are responsible for reporting complaints of discrimination to the Civil Rights Unit of ODMHSAS and implementing corrective action for discriminatory conduct.

23. Plaintiff is a member of the LGBTQ community.

24. On one occasion, Plaintiff was held in a conference room by then-Executive Director Randy May. May demanded to know Plaintiff's "gay name," which, according to May, consisted of the first street he ever lived on and the first dog he ever owned.

25. The incident was reported and investigated.

26. Thereafter, May was permitted to resign in lieu of termination, which preserved his retirement benefits.

27. On or about February 2, 2016, Plaintiff was sexually harassed by co-worker Marty Wilson.

28. Wilson called Plaintiff derogatory names related to his sexual orientation.

29. Plaintiff notified Alba, then supported his complaint with witness statements.

30. Alba told Plaintiff that he and Wilson, who are both older than Plaintiff, were "from the same generation" and that Plaintiff "should just let it go."

31. On information and belief, Wilson was not disciplined for his discriminatory conduct.

32. Alba's suggestion to "just let it go" and his condoning the behavior based on his "generation" indicate Alba's willingness to allow, rather than prohibit, discriminatory conduct within ODMHSAS.

33. Furthermore, Alba was frequently found to be extremely affectionate with female employees.

34. Alba did not hold the female employees accountable to the same standards as he did Plaintiff.

35. In September 2016 and September 2017, Plaintiff applied and was approved for leave under the FMLA as a result of a serious health condition.

36. All Plaintiff's FMLA leave was scheduled and approved in advance by Alba.

37. However, on numerous occasions, Alba advised Plaintiff that he "should be glad [he had] FMLA protections," or words to that effect.

38. In early March 2018, Alba announced his retirement.

4

39. On March 14, 2018, the vacancy for the DON position was announced.

40. Plaintiff submitted his application for the DON position the same day.

41. Before he applied, Alba said to Plaintiff, "I'm not telling you to not put in for the [DON] position, but do you seriously think that your leave will not be considered?"

42. Plaintiff asked whether Alba was referring to his approved FMLA leave, and Alba said, "Yes, they need someone that can be here five days a week."

43. Alba continued to discuss Plaintiff's use of FMLA as being a pivotal factor in the decision-making process for the next DON.

44. The following day, Plaintiff talked to Alba again about his comments regarding his leave. Alba said, "I think you are a contender, Dallas. But I think the fact that you are not here a lot does not help you."

45. Alba encouraged Plaintiff to discuss his use of FMLA during his interview for the DON position.

46. ODMHSAS policy 9.1 "Application and Selection Process" sets out the procedures for conducting interviews. Procedure 2c states (emphasis added):

The structured interview process shall incorporate the use of an interview panel. The interview panel **shall** be comprised of at least one female, one male and one a member of Minority Race or Ethnicity [defined in the policy as "Black, Hispanic, Asian or Pacific Islander and American Indian or Alaskan Native"]. One of these individuals may be designated as the chairperson of the interview by the Hiring Authority. The hiring authority **shall** select interview panel members who are knowledgeable about the skills needed to perform the duties of the vacant position and have successfully completed the E-Learning course "Interview and Selection Process". [sic] The

immediate supervisor of the vacant position should be a member of the interview panel unless an unstructured interview is anticipated.

47. The interview panel for the DON position consisted of four people: Katie Landers, Director of Management Support Services; Jim Igo, Outgoing Executive Director; Aaiza Chaudhry, Director of Consumer Services; and Mike Alba, Outgoing-DON.

48. The interview panel did not meet the requirements as set out in ODMHSAS policy.

49. The policy states that the panel members **shall** have completed the "Interview and Selection Process" course, but none of the panel members had completed the course.

50. The policy also states that the interview panel **shall** be diversified by both gender and race or ethnicity.

51. While it appears that the panel did meet the gender diversity requirement, it is unclear whether the panel included a member of a minority race or ethnicity.

52. Two of the members of the panel had either shown or had cause to act in a non-neutral manner towards Plaintiff.

53. Alba was not a neutral panel member.

54. Alba had previously demonstrated his unwillingness to prohibit illegal sexual harassment after complaints lodged by Plaintiff.

55. Alba had told Plaintiff that his use of federally protected FMLA leave would be a factor in in his application for the DON position.

56. Alba was known to treat female employees more favorably than males.

57. Landers was not a neutral panel member.

6

58. Landers had cause to be biased against Plaintiff because he had previously reported a relationship between Landers' sister and a nurse under his supervision because the relationship violated agency policy.

59. Chaudhry was not a qualified panel member because she had been at Griffin Memorial Hospital less than two weeks prior to the interview.

60. As a result, Chaudhry did not have time to obtain the requisite knowledge of the skills needed to be a successful DON at Griffin Memorial Hospital.

61. After the DON interview in March 2018, Igo told Plaintiff that the DON position was decided by a variant of only one point.

62. Plaintiff asked Igo whether the decision had anything to do with his FMLA and reminded him that FMLA was protected and should not have been a factor.

63. Igo stated that his FMLA use didn't carry that much weight and advised Plaintiff that he was "just splitting hairs."

64. Igo went on to state that Plaintiff was set to be the next DON if he "kept up all [his] hard work,"

65. However, Igo has since separated from ODMHSAS.

66. The only other applicant interviewed for the DON position was Sinda Hembree.

67. Hembree's qualifications were inferior to Plaintiff's.

68. Hembree had only an associate degree, while Plaintiff has both a Bachelor of Science in Nursing and Bachelor of Arts in Adult Corrections/Psychology.

69. Hembree had only one and half years' experience, while Plaintiff has at least eight years' experience acting in a management role.

7

70. Additionally, Hembree had a close personal relationship with Alba, which allowed her to receive two hours of personal coaching from panel member Alba prior to the interview, in addition to creating an appearance of bias.

71. After her appointment as DON, Hembree made numerous attempts to deny or delay Plaintiff's requests for protected FMLA leave.

72. Hembree continued her personal relationship with Alba, and frequently texted him with questions about how to perform her job.

73. In early June 2018, Igo pulled Plaintiff into a room with his peers and stated that Hembree didn't feel supported in her position as DON. Igo stared in an accusatory manner at Plaintiff the entire time he spoke.

74. Plaintiff responded that he had been doing Hembree's work as well as his own. Igo told Plaintiff that "anyone that doesn't support Sinda needs to leave."

75. In June 2018, Plaintiff took FMLA-protected leave. Upon his return to work, he discovered that Landers had discussed Plaintiff's use of FMLA with another employee.

76. Specifically, Landers had asked one of Plaintiff's subordinates "What's really going on with Dallas?" When the subordinate said he didn't know, Landers said "Well, this doesn't help his case."

77. In December 2018, ODMHSAS announced a newly created Assistant Director of Nursing ("ADON") position; Plaintiff applied and was selected as the ADON.

78. ODMHSAS hired a Nursing Coordinator to replace Plaintiff after his promotion, but never brought her onto the shift. As a result, Plaintiff had to perform the duties of both the ADON and Nursing Coordinator despite his promotion.

79. On January 31, 2019, EEOC issued Plaintiff's first Dismissal and Notice of Rights letter.

80. Between that date and the date Plaintiff received his copy of the letter, Plaintiff attended a training session at ODMHSAS.

81. At least fifteen (15) other employees were present at the training session, one of which was Jason Maricle, Human Resources Manager.

82. During the training, Maricle addressed the room and looked primarily at Plaintiff when he stated "Hannah Thomas [Assistant General Counsel for ODMHSAS] has never lost an EEOC lawsuit," or words to that effect.

83. Hembree resigned as DON on or around April 30, 2019; however, Hembree remains employed as the evening Nurse Coordinator.

84. Plaintiff is technically Hembree's supervisor; however, she is not assigned to him.

85. On April 30, 2019, Plaintiff's Petition was filed in this suit.

86. In May, June, and July 2019, Plaintiff used FMLA-protected leave.

87. Upon his return from leave, Plaintiff learned that Michele Krizan, secretary to the Hospital's Executive Director Hank Hartsell, had discovered Plaintiff's Petition and began questioning employees about the same. A rumor was started that Plaintiff would not be returning to work.

88. Since filing his Petition, Plaintiff has been the victim of continued discrimination, harassment and retaliation.

89. Chaudhry, Landers, and others in management refuse to speak to Plaintiff, which makes it extraordinarily difficult for Plaintiff to perform his job effectively.

90. Plaintiff has been excluded from attending a leadership conference with other members of management.

91. Plaintiff has been left off emails sent to other members of the nursing management team, despite repeated requests to be included because he is a member of the team.

9

92. Hospital Executive Director Hank Hartsell has made it clear to Plaintiff that Hartsell doesn't want Plaintiff there.

93. On or around June 11, 2019, Plaintiff attended a meeting led by Maricle, Hartsell, Landers, and others in the nursing department.

94. Maricle stated that they would begin doing education on the interview selection process and FMLA procedures "because we haven't been completing the required education. So, we will do that and get everyone trained on FMLA." This action appears to be in direct response to Plaintiff's initial Petition.

95. Plaintiff had been prohibited by management from displaying gay pride colors on his name badge or in his email signature.

96. On or around August 2, 2019, Plaintiff reported to a morning management meeting. Krizan wore a gay pride shirt that said, "Love wins." Krizan said "I wore it for Dallas. What can he say about it?" Employees that heard the statement laughed.

97. Hartsell was present for the exchange, and he did not admonish the behavior.

98. On or around September 6, 2019, Plaintiff was presented with his first PMP in four years.

99. The document was handwritten, covered a review period of two weeks, was signed by Hembree dated June 14, 2019 (opening date) and June 28, 2019 (closing date). Plaintiff was instructed to backdate his signature to June; he refused and dated for the date presented.

100. Hembree was not Plaintiff's supervisor during the alleged review period since she had resigned as DON in April.

101. On September 13, 2019, Krizan wore the gay pride shirt again.

## CLAIM ONE – TITLE VII DISCRIMINATION
## ON THE BASIS OF SEX AND/OR GENDER
## (AGAINST ODMHSAS)

102. Plaintiff incorporates all previous paragraphs as if set forth herein.

103. Title VII prohibits discrimination on the basis of sex, which includes discrimination on the basis of sexual orientation.

104. Plaintiff is male and identifies as gay.

105. Plaintiff works in a career field traditionally populated by female workers.

106. The discrimination Plaintiff experienced and continues to experience while employed with Defendant ODMHSAS is a direct result of his non-compliance with societal expectations of gender norms.

107. Plaintiff applied and was qualified for the vacant DON position.

108. Plaintiff interviewed for the position, but ODMHSAS filled the vacancy with a female employee possessing lesser qualifications than Plaintiff.

109. Plaintiff had previously been the victim of sexual harassment, which was condoned by Alba who sat on the interview panel.

110. Alba, as an employee of ODMHSAS had an obligation to address the sexual harassment that was reported by Plaintiff.

111. Hartsell, as an employee of ODMHSAS had an obligation to address sexual harassment that he observes.

112. Because ODMHSAS refuses to admonish its employees when they engage in illegal discriminatory behavior, ODMHSAS has created an atmosphere of disrespect and disregard for members of the LGBTQ community and the law.

113. As a result of Defendant ODMHSAS's conduct, Plaintiff was and is forced to endure a hostile work environment, was not promoted or given a raise, was overlooked for promotions for

which he was otherwise qualified, has lost wages, and sustained damage to his reputation and career.

114. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant ODMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

115. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendant ODMHSAS for its wrongful conduct.

## CLAIM TWO – VIOLATION OF THE OKLAHOMA ANTI-DISCRIMINATION ACT
### (AGAINST ODMHSAS)

116. Plaintiff incorporates all previous paragraphs as if set forth herein.

117. The incidents described above that violate Title VII also violate the Oklahoma Anti-Discrimination Act.

118. As a result of Defendant ODMHSAS's conduct, Plaintiff was forced to endure a hostile work environment, was not promoted or given a raise, was overlooked for promotions for which he was otherwise qualified, has lost wages, and sustained damage to his reputation and career.

119. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant ODMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

120. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against the Defendant ODMHSAS's for its wrongful conduct.

## CLAIM THREE - DISCRIMINATION ON THE BASIS OF FAMILY MEDICAL LEAVE USE (AGAINST ALL DEFENDANTS)

121. Plaintiff incorporates all previous paragraphs as if set forth herein.

122. The FMLA applies to state government employers.

123. Section 105 of the FMLA and Section 825.220 of the FMLA regulations prohibit, among other things, discriminating or retaliating against an employee for having exercised his rights under the FMLA.

124. These federal statutes and regulations also prohibit an employer from interfering with or otherwise prohibiting an employee from exercising his rights under the FMLA.

125. Plaintiff applied and was approved for FMLA because he has a qualifying serious health condition.

126. Plaintiff was told by Alba, one of the interview panel members, that his use of FMLA would be considered and have a negative impact on his ability to successfully promote to DON.

127. Alba encouraged Plaintiff to discuss his FMLA usage during the interview.

128. After the interview, Igo, another panel member, told Plaintiff that *his FMLA usage didn't carry that much weight.*

129. Since federal law prohibits discrimination on the basis of exercising FMLA rights, Plaintiff's use of FMLA should not have been considered or even discussed either during his interview or in panel deliberations following.

130. The statements by both Alba and Igo indicate that Plaintiff's rights under federal law were violated because his FMLA usage was considered when selecting which candidate to promote to DON.

131. Landers and Chaudhry were also on the interview panel that considered Plaintiff's FMLA usage.

132. As a result of the unlawful conduct of Defendants ODMHSAS, Alba, Igo, Landers, and Chaudhry, Plaintiff has suffered and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind, a reaction that any reasonable person would have under like circumstances.

133. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against Defendants ODMHSAS, Alba, Igo, Landers, and Chaudhry for their wrongful conduct.

## CLAIM FOUR - EEOC RETALIATION
## (AGAINST ODMHSAS)

134. Plaintiff incorporates all previous paragraphs as if set forth herein.

135. The federal laws governing the EEOC prohibit an employer from punishing an employee for asserting his rights to be free from employment discrimination and harassment. Examples of exercising EEOC rights include, but are not limited to, filing an EEOC charge, complaint, investigation, or lawsuit or communicating with a supervisor or manager about employment discrimination and harassment. (See https://www.eeoc.gov/laws/types/retaliation.cfm, last visited Sept. 17, 2019)

136. Plaintiff filed his initial complaint with the EEOC in May 2018.

137. In September 2018, Plaintiff and ODMHSAS attended an EEOC-mandated mediation. The mediation failed.

138. In December 2018, ODMHSAS announced a newly created Assistant Director of Nursing ("ADON") position. Plaintiff applied and was selected to serve as the ADON.

139. This conduct by ODMHSAS appears to be a blatant attempt to mitigate the damages Plaintiff has incurred as a direct result of ODMHSAS's unlawful conduct.

14

140. On January 31, 2019, the EEOC issued Plaintiff's Dismissal and Notice of Rights letter. This letter authorized Plaintiff to file the instant suit.

141. Between the date the Dismissal and Notice of Rights letter was mailed, and the date Plaintiff received his copy, Plaintiff attended a training session at ODMHSAS with Maricle and at least 15 other employees.

142. During the training, Maricle addressed the room and looked primarily at Plaintiff when he stated that "Hannah Thomas [Assistant General Counsel for ODMHSAS] has never lost an EEOC lawsuit," or words to that effect.

143. On multiple occasions since learning of this lawsuit, Landers, Chaudhry, and others have refused to speak with him, effectively interfering with his ability to perform his job.

144. The conduct described above is retaliation and intimidation directed at Plaintiff for exercising his protected rights with the EEOC.

145. Furthermore, such conduct can serve as the basis for additional EEOC complaints.

146. Plaintiff has suffered, and continues to suffer, the type of mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and disruption of his peace of mind as a result of Defendant ODMHSAS's unlawful conduct, a reaction that any reasonable person would have under like circumstances.

147. Plaintiff Dallas Loffi-Lara has been injured in an amount in excess of $75,000 and is entitled to judgement against Defendant ODMHSAS.

WHEREFORE, Plaintiff Dallas Loffi-Lara demands judgement in his favor against the Defendants in an amount in excess of $75,000 for their wrongful, improper, and illegal conduct. Plaintiff Dallas Loffi-Lara requests that he be awarded his lost wages, damages for harm to his reputation, mental anguish, embarrassment, anger, frustration, disappointment, regret, despair, and

disruption of his peace of mind, and punitive damages. Plaintiff Dallas Loffi-Lara further requests that the Court award the costs and attorney's fees associated with this suit, and any and all other relief that the Court deems just and equitable.

Respectfully submitted,

*/s/ Rachel Bussett*

Rachel Bussett, OBA#19769
Patricia A. Podolec, OBA #21325
Bussett Legal Group, PLLC
2201 N. Classen Blvd.
Oklahoma City, OK 73106
Telephone: (405) 605-8073
FAX:   (405) 212-9112
Email: Rachel@BussettLegal.com
           PPodolec@Bussettlegal.com

*ATTORNEY'S LIEN CLAIMED*
*JURY TRIAL DEMANDED*